[Civ. No. 43001. First Dist., Div. Four. May 4, 1978.]

KAREN ANN STEFFEN et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE CENTRAL JUDICIAL
DISTRICT OF SAN MATEO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Michael Kennedy and Thomas Steel for Petitioners.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Real Party in Interest.

## Opinion

**WILSON, J.\***—Petitioners, Karen Ann Steffen and Lisa Lynn Grow, seek a writ of mandate directing respondent Municipal Court, Central Judicial District of San Mateo County, to grant their motions for change of venue.

Petitioner Steffen is charged with a violation of Penal Code section 647, subdivision (b), soliciting an act of prostitution, allegedly occurring on September 8, 1977, and petitioner Grow is charged with the same offense allegedly occurring on October 11, 1977. Each has made motions for change of venue in the trial court and has sought appropriate relief in the Superior Court of San Mateo County without success. Each now seeks relief in this court by way of this mandate proceeding.

■ In a proceeding of this nature an "appellate court may not limit itself to an 'abuse of discretion' review; rather, it makes an independent review of the evidence and reaches a de novo decision." (*Corona* v. *Superior Court* (1972) 24 Cal.App.3d 872, 875 [101 Cal.Rptr. 411]; *Maine* v. *Superior Court* (1968) 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372].)

■ A motion for change of venue should be granted when the defendant shows " 'a reasonable likelihood that in the absence of such relief, a fair trial cannot be had.' " (*Maine* v. *Superior Court, supra,* 68 Cal.2d at p. 383; *Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 294 [95 Cal.Rptr. 798, 486 P.2d 694].) " 'Reasonable likelihood' " of prejudice does not mean that prejudice must be " 'more probable than not.' " (*Frazier* v. *Superior Court, supra,* 5 Cal.3d at p. 294; *Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672, 680 [103 Cal.Rptr. 379].)

■ Petitioners contend that a change of venue is required because the Easy Street Theater, their place of employment when the offenses were allegedly committed, has been the subject of extensive pretrial publicity and has a reputation in the community as a place where prostitution is regularly solicited, by employees and others who frequent the premises.

No purpose would be served by setting forth in detail the many examples of newspaper and other media items which have been submitted as exhibits. It is sufficient to note that they show that for the past nine years the premises in question, and the former and present

---

\*Assigned by the Chairperson of the Judicial Council.

owners, have been engaged in a more or less continuous controversy with law enforcement officials, which has been well covered by the San Mateo Times and the Redwood City Tribune as well as in radio and television broadcasts in the area.

The coverage has not been inflammatory or particularly hostile, nor has it, in any sense, involved petitioners by name. Some of the articles are somewhat "tongue-in-cheek" as they describe the disputes with the police and other law enforcement officials, but they leave no doubt that the premises are regarded by the authorities as a place devoted primarily to lewd conduct, including prostitution.

The Easy Street Theater has been the subject of two proceedings under the Red Light Abatement Act (Pen. Code, §§ 11225-11235.) The most recent of these resulted in the San Mateo County Superior Court, on December 21, 1977, granting a permanent injunction under the act, closing the theater for one year as "a resort of lewdness and prostitution for profit." This determination is being challenged on appeal and the post-judgment proceedings have been the subject of very recent publicity. The following lead paragraph from an editorial in the Redwood City Tribune on December 26, 1977, commending the superior court for its action, rather effectively expresses the flavor of the ongoing newspaper publicity: "Tucked away in the Tribune's library is a thick file documenting nine years of attempts to shut down Easy Street, San Mateo County's most blatant purveyor of sexual come-ons."

The Attorney General argues that the newspaper publicity cannot be regarded as significantly pervasive, since the combined circulation of the two newspapers is approximately 65,000 in a county of close to 575,000 persons. However, as petitioners point out in their supplemental exhibits, these figures can be misleading unless consideration is given to family size and to the number of persons residing in that part of the county in which respondent court is located. According to their calculations, if these factors are taken into account, it can be inferred that these newspapers reach approximately 55 percent of the population involved.

Of even greater significance is the testimony of the Chief of Police of San Mateo, the city attorney, and the pastor of the First Presbyterian Church of San Mateo during the red light abatement proceedings. These witnesses testified concerning the common reputation which the Easy Street Theater has in the community and all agreed that it has a

reputation for lewd, obscene and illicit conduct. In addition, the District Attorney of San Mateo County, in the complaint which initiated the second abatement proceeding, alleged that "'said premises have borne the reputation in the community in which it is situated as a place of lewdness, assignation and prostitution, and a place where acts [of] prostitution are encouraged and allowed."

It would appear that the superior court accepted this testimony and found these allegations to be true in granting the aforesaid injunction.

We conclude that petitioners have made a showing sufficient to entitle them to the relief sought.

We recognize that the charged offenses are not of a nature to inflame the community, nor were there popular or prominent victims whose fate produced an outpouring of community sympathy and indignation. Both of these factors were present, in varying degrees, in *Maine* and *Frazier*, each case involving particularly aggravated murders and assaults. However, a suspected prostitute is just as much entitled to a fair trial before an impartial jury as is a suspected murderer.

Here the publicity which we have described has resulted in the Easy Street Theater having developed a reputation for being a place where the very offenses with which petitioners are charged are routinely committed by employees—a category to which petitioners belong. It would seem certain that the fact that petitioners are employees at Easy Street will come out during their trial and it is very doubtful if, once this fact emerges, any juror, aware of the reputation of the premises, could fairly judge petitioners' guilt or innocence, regardless of how hard a juror sought to dismiss this awareness from his or her mind.

Given the long-term publicity and considering the testimony of knowledgeable and impeccable witnesses concerning Easy Street's reputation, as well as the allegations of the district attorney and the finding of the superior court, we think it reasonable to infer that this awareness has so permeated that part of the county in which the trial would take place, that there is a "reasonable likelihood that a fair trial cannot be had."

Let a peremptory writ of mandate issue directing the trial court to grant petitioners' motions for change of venue, hold a hearing to determine a

place where fair and impartial trials can be had, and transfer the causes to that place.

Caldecott, P. J., and Rattigan, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied June 29, 1978. Clark, J., was of the opinion that the petition should be granted.